The next and final case for argument this morning is 14-1852 Butler v. Balkamp. My name is Narajan Singh with my co-counsel Joseph C. Zito, plaintiff's appellant, Kenneth B. Butler Sr. Today, before the Court, we present three main issues. Firstly, the District Court granting summary judgment with facts in dispute. Secondly, the District Court not taking into consideration the only actual evidence that was submitted by the plaintiff's appellant to determine the design pattern infringement. And thirdly, the District Court substituting the opinion of Judge Barker to that of ordinary observance test. Moving on with the first issue, Your Honour, that is the District Court granting summary judgment with facts in dispute. A summary judgment should only be granted when there is no genuine issue of material facts, or after determining all the factual inferences, the reasonable jury would not return a verdict in favour of a non-moving party. So what are the disputed facts? The disputed facts here is the evidence that was submitted after the survey that was done where 28 ordinary observers were approached and they were asked to determine the infringement and all 28 of them determined infringement with regards to the infringing product and the design. That was submitted as an evidence which was never considered by the District Court. Are there good reasons not to have considered it? I mean, it's confusing. We don't know what the question is. The responses are YAE, which I don't know if there's any real definition for that. I presume you take that as yes. So, I mean, if we look at it, I assume the judge, the District Court judge didn't even speak to the survey, did he? No. But aren't there really good reasons when you look at it to say, nice try, but there's just no way that this creates a material disputed fact? Your Honour, our client is an 85-year-old senior citizen. He, despite the fact that he's disabled, he made an attempt to collect this evidence by approaching various tool shops and approaching all the ordinary purchasers, and it was a survey done based on the analysis done by these ordinary observers where they found infringement. That's the best he could do at that moment. And since Richardson clearly states that design patent is more facts-oriented, Judge Barker should have done the ordinary observer test in the light of this particular evidence that was submitted before the Court. Moving on with the second issue, Your Honour, that is the District Court not considering the only actual evidence that was submitted before the Court by the plaintiff's appellant. Egyptian Goddess clearly highlights the fact that the full test for determining infringement in a design patent case is the ordinary observer's test. And Judge Barker doing an ordinary observer's test by not taking into consideration the observation done by 28 ordinary observers or 28 ordinary consumers who identified confusion with regards to the infringing product and the design patent is erroneous. That's one of the main reasons why we're saying that the ordinary observer test not taking into consideration the observation done by the ordinary observer in itself is wrong. Moving on to another issue, Your Honour, that is the District Court substituting Judge Barker's opinion to that of ordinary observer's test. Again, Egyptian Goddess clearly highlights the fact that when you're doing an ordinary observer's test, ordinary observer is a person who is aware of prior arts. Ordinary observer is a group of people who is aware of the products that are available in the market and exercises due prudence or attention when making the purchase of the product. Now, these 28 consumers, they were aware of the product, they were aware of the prior arts, and they exercised due prudence. How do we know their level of awareness of the prior arts? Your Honour, our client, Kenneth Butler Sr., approached tool shops when he approached these regular consumers. And based on their analysis with regards to the level of similarity between the infringing product and the design patent, they determined whether it infringed or not. How do we know whether that confusion was based on the design or based on the function of these tools? That is a very good question, Your Honour. Basically, whenever you do a comparison between a design patent and an infringing product, the comparison should only be with regards to the ornamental aspect, ornamental features. It was made sure that they identified the ornamental features and not the functional features when the comparison was done. When the survey was taken, what specific part of the question identified those ornamental aspects? Though it is not mentioned in the evidence, when the survey was done, the ornamental features such as the knurling grip and the tapered front end and the tapered back end, those were the aspects that were taken into consideration and not the male square drive. How do we have any idea? That is not in the record, is it? No, Your Honour. What question was asked to the people in the survey? The question that was asked was with regards to whether you are taking into consideration the male square drive or the female square drive. Those are the functional features which should not be taken into consideration. Where are we getting that? I am looking at the survey list and we have got this document, right, that says if you believe both units are the same, showing both unit handles are the same, yea or nay. That is what we have, right? Yes, but the authenticity or the admissibility of this particular evidence was never questioned by the district court. Well, the question is what information, what is the nature of the inquiry made to the responding parties? I think what the Chief Judge just read looks like it is the only thing the responding parties were asked, right? At the top of 831? Yes. And that was the only actual evidence that was submitted, Your Honour, because Richardson clearly said that design patent infringement is fact-based and the only way to prove infringement is by preponderance of evidence. Well, that suggests that you can never have summary judgment on design patent infringement case and we know that can't be right because we have had other cases that granted summary judgment. Yes, Your Honour. For example, the Egyptian Garden itself had summary judgment, but was the summary judgment granted without considering the only actual evidence that was presented before the court? No. Well, aren't you supposed to, in the design patent analysis, compare the accused product to the design patent drawings? So, right, that is the analysis, it is not comparing two different products, it is comparing the design. There is no indication that that was before any of the survey respondents, right? Can you repeat that? Under the design patent analysis, are you not supposed to look at the accused product compared to the design patent? Yes. And here, this survey, to the extent we understand what actually we are doing, they were looking at two different units. They weren't looking at the design patent, right? The drawings and the design patent. They were looking at the design patent and the infringing product, Your Honour. How do we know? I mean, I don't know what they, they were looking at two products or a patent and an accused product? They were looking at two products. Two products, okay. Yes. So they weren't looking at the patent, they were looking at the product. Yes, Your Honour. Okay, and isn't an analysis in design patents between the accused product and the patent drawings? Yes. Initially... So do you think that's a problem? We don't think that's a problem, Your Honour, because the design product, the product for which the design patent was held, represents the design patent exactly. And when we talk about the comparative...  No, Your Honour. For example, when the comparative analysis was done between the design patent and the infringing product itself, the District Court clearly identified the functional features and the ornamental features. And when the comparative analysis was done, functional features like male square drive and female square drive were identified as the functional features, and the comparison was done between the ornamental features, that is, the null drift, the tapered front end, the tapered back end, and the un-nulled front end. However, when the District Court made this analysis, as it's been clearly held in Proxy ITC that when you do a comparative analysis between functional features of design patents to prove infringement, the functional features should be considered as a whole and not independently. But the District Court judge, she identified independent, minute features to accentuate the differences between the ornamental features of the design patent and the infringing product. And then, in somewhat way, tried to incorporate functional features to accentuate the minute differences between the ornamental features, between the infringing product and the design patent, Your Honour. To make sure that I've got the right references here, page 11 of the appendix, which is at the back of your brief, I believe, has the spinning impact extension and the 646 patent design. Those are, I take it, the two items that are in dispute and that were shown to the survey respondents. Yes. And the back of the spinning impact extension, for example, looks like, other than the functional square hole, it looks very different from the back of the 646 patent design, right? Are we talking about the protrusion from the... Well, we're talking about the spinning impact extension has a blue colour in the barrel and then, behind the barrel, there's an extrusion of something in black. Yes. That looks like that's completely absent from the 646 patent design. But that's the thing, Your Honour. Is it not? That is the functional feature of the infringing product. That is the female square drive, which should not be taken into consideration. But that's in... There is a female square drive in the 646 patent design as well. Yes. It's just... It is not... It takes a very different form, right? Yes. Those are the functional features which should not be taken into consideration when you do the comparative analysis. And you just take it... Even if the functional features are completely different in design as well? It depends, Your Honour. For example, there's a case where there was a ceiling fan with palm leaves. But, like, in that case, consumers who are trying to purchase a ceiling fan will purchase a ceiling fan because they want the ceiling fan with palm leaves. But in this case, it's not the same. How much impact will that particular functional feature impress upon the ordinary consumer is one of the questions that should be taken into consideration by this Court as well, Your Honour. Well, if you have... Are you saying, in effect, then, the only features of the patented design that ought to have been taken into account, taking off the front end and the back end, are the knurled rod? Knurled rod, yes. So, you're saying any knurled rod would infringe this patent? No, Your Honour. We're saying that we're supposed to take into consideration the functional feature, which is the knurled handle. There is the tapered front end, the tapered back end, and there is a knurled front end. Well, I'm not seeing a tapered front end of the knurled rod in the spinning impact extension. I see a front end that is not knurled for some distance and a back end before you get to the black section that is not knurled. But other than that, what is it that's tapered in the spinning impact extension? Your Honour, it was identified during the Markman hearing. These are the features of the tool that were identified by the district court during the Markman hearing. And tapered front end, in the patent that's held by our client, is one of the ornamental features, and it is not the functional feature. Okay. Where is it in the spinning impact extension? Tapered front end? Yes. I don't see a tapered front end in that. In the spinning impact? Right. There is a tapered front end in the spinning impact, which is... Is it just not shown, or am I misunderstanding tapered? I mean, it looks to me like in the spinning impact extension, you could say that it has five features. One, it has the square device coming out the top. It has the round device coming out the back. Those are both functional, as you say. And therefore, shouldn't be taken into consideration. Other than that, it has three features. One is, it has a tube which has a smooth portion at the back, a narrowed portion in the middle, and a smooth portion at the front. I'm not seeing anything tapered. But the protrusion from the smooth portion in the front, which... Is that just because I can't see that? Is there a tapered section there that I'm not seeing in that diagram? There is a tapered section in the infringing product as well, Your Honour. Okay. I don't see it in that diagram, and I don't see it in the diagram on A29, which I take it is the accused. Is there a diagram that shows the tapered section of the accused's device? Or a picture, or anything? Well, maybe you can wait and on reply you can show us if there is one. All right. Why don't we hear from the other side? Mr. Bowler? Good morning, Your Honours, and may it please the Court. I am John Bowler, representing the Apple East. The heart of this appeal is whether the district court correctly applied the ordinary observer test set forth in the Egyptian goddess case, which is the test the district court stated it was applying, to correctly... The district court didn't discuss the survey, right? The district court did not discuss the survey, Your Honour. Even if they're wrong, and we would agree with her if she had given all of these reasons why the survey is unreliable and unclear and yadda yadda, isn't it problematic that we don't have any of that discussion by her? I don't see that as problematic, Your Honour, and I point, Your Honours, to your own court precedent, to the Winner case cited in our briefs. And in the Winner case, which was an affirmative summary judgment of non-infringement, a similar argument was made, as the appellant did here, that the district court ignored... In that case, it was an evidence, not just a bald letter from a client to an attorney, but argued that ignored evidence in an affidavit of an incidence of actual confusion. And this court said that simply because the magistrate judge did not refer to that evidence of actual confusion in its summary judgment order does not mean that the court did not consider that evidence. And in fact, the evidence itself, in any event, was insufficiently probative of the issue of infringement under the ordinary observer test to create any issue of fact, which goes back to the questions Your Honour has been asking this morning, that these 28 signatures were simply insufficient to create a material issue of genuine fact to require us, for example, to go out and get a counter-survey. This court has said, I think it was the Sage Products case, where typically, unlike a trade dress case, typically in a design patent case, general evidence of consumer behavior isn't as relevant, because the standards are different in trade dress than design patent infringement. In design patent infringement, you have to look at the, under the ordinary observer test, is one familiar with all the prior art, and also has to look at the, compare the devices, factoring out the functional features. And in this case, there simply is no evidence. It's just lawyer argument about what this, quote unquote, survey consisted of. We established, as the movement on summary judgment, that there was no genuine issue of material fact, such that we were entitled to summary judgment as a matter of law, which shifted the burden to the non-movement to come forward and create trial issues of fact with an affidavit, with some documentary evidence, with something under Rule 56C, or to request the court under 5060 for a continuum, so that it could take some discovery or go out and get that evidence. And that simply wasn't done in this case. And the 28 signatures are simply insufficient to create the trial issue of fact. We submit that the district court had a very detailed analysis, properly applied the ordinary observer test, pointed out differences, as well as similarities, between the two designs, which this court's precedent says is permissible to do, going back to the Goodyear decision, through your decision in Richardson, through the decision in Egyptian Goddess, which itself was a tool, which was a hand tool, a nail buffer, pointing out differences between the patented design, which was a three-sided brace of buffer, versus the accused design, which was a four-sided buffer. And the court went out and pointed out, in this case, that there isn't a taper, that the knurled handled portion is significantly different. In fact, knurled handles are in the prior art. And the court noted that, and cited prior art in the court's opinion. In all of that, the knurling in the prior art, there were tapered front ends in the prior art, there were chamfered back or... I mean, I didn't see a taper in your product. Your Honor, there isn't a taper, and that argument was not even presented below, so it's been waived. I think, I mean, to give him the benefit of the doubt, and I think what he may be trying to argue is if you go to that front end of the extension, it's not a taper, but there's some little, I don't know what you'd call it, little rounding, but it's not a taper as such. So I'm hearing that argument for the first time on this appeal, and I'm doing my best to react to it. But it clearly is not... But that front end was one of the portions that, if I understand your opposing counsel's argument, which should be disregarded for purposes of comparing the design with the accused. Correct. No, that is correct. And to find essentially what the court would have to do to reverse this grant of summary judgment is make a sea change in the law that a patent holder can go and ignore virtually every ornamental feature that it claimed in its design patent in terms of the comparison against the accused device. And in here, it's telling that the parties essentially stipulated that there were seven features in this patented design, two of which, the ends, were functional, the rest are ornamental. Yet at no time in response to the summary judgment below, when we showed those features, all of those ornamental features were missing from the accused device, did it come back and try to say, no, there actually is a taper. Or no, you actually have knurling in the spinning impact extension extending all the way down the handle. It's just never shown that a reasonable juror could find those ornamental features in the accused product. Unless the court has further questions, we'd rest our remaining argument on our briefs and ask that the summary judgment be affirmed. Thank you. Your Honor, we argue that the summary judgment should not have been granted. Do we have an answer to Judge Bryson's question? Yes. First, before you go on. If I can just show you this particular page 13, it's going to be... Well, just tell us what page it is. Page 13. Page 13? Yes, Your Honor. We identify this particular section as the tapered section. May I see the analysis? So, there is a place where the rounded tube extension converts into a square extension. Yes, Your Honor. And you say there's a taper there? Yes. All right. If it may please the Court, we just argue that the summary judgment should not have been granted in this case because there was a facts and dispute. Hence, the summary judgment should be replicated and this case be remanded. If there's no further questions... Thank you. And so, I confirm the case was submitted and that the proofs are proceeding to this morning. All rise.